IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GARY LEE STINNETT, SR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-00252-Y-BL |
| | § | |
| NANCY A. BERRYHILL[1], | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Gary Lee Stinnett Sr. seeks judicial review of the decision of the Commissioner of Social Security, who denied his application for disability insurance benefits under Title II of the Social Security Act. The United States District Judge reassigned the case to this court pursuant to 28 U.S.C. § 636(c). The parties have not unanimously consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, the undersigned recommends the Commissioner's decision be reversed and Stinnett's case remanded to the Administration for further proceedings.

### I. STATEMENT OF THE CASE

Stinnett filed his application for DIB on December 7, 2011. That application was denied initially on October 2, 2012 and after reconsideration on January 18, 2013. Stinnett requested a hearing, which was held before an Administrative Law Judge on February 18, 2014. The ALJ issued a decision on September 13, 2014 finding Stinnett not disabled.

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), the Court automatically substitutes her as the named defendant.

Specifically, the ALJ found during step one that Stinnett had not engaged in substantial gainful activity since August 18, 2010. (Doc. 10-3, 13). At step two, the ALJ determined Stinnett had the severe impairments of obesity, degenerative disc disease of the cervical spine, a left rotator cuff tear and repair surgery, COPD, congestive heart failure, and atrial fibrillation. *Id.* In the third step, the ALJ found those severe impairments did not meet and were not equivalent to any listed impairments. (Doc. 10-3, 15). The step three analysis continued, with the ALJ finding Stinnett retained the residual functional capacity to perform the full range of light work. *Id.* At step four, the ALJ concluded Stinnett was able to perform past relevant work as a warehouse supervisor and determined he was not disabled. (Doc. 10-3, 19).

Stinnett applied to the Appeals Council, which denied review on February 17, 2016. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to his pleadings, testimony at the administrative hearing, and the administrative record, Stinnett was 57 years old and a self-described "house husband" at the time of the administrative hearing. He has a bachelor's degree and experience working as a heavy equipment operator, truck driver, and warehouse manager. He believes his impairments render him incapable of past relevant work and disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's residual functional capacity. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). If substantial evidence supports the Commissioner's findings, then the findings are conclusive

and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452.

The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

Stinnett raises three issues on appeal. He claims some severe impairments were not incorporated into the RFC, the ALJ did not follow legal standards requiring the consideration of non-severe impairments in crafting the RFC, and that the determination he could return to past relevant work as a warehouse supervisor is unsupported by substantial evidence.

### A. Severe impairments and the RFC

Stinnett asserts "[t]he underlying record in this case demonstrates that … [the] 'severe' impairments of [a] left rotator cuff tear…, COPD, and congestive heart failure contribute" limitations that were not sufficiently incorporated into the RFC. (Doc. 12, 13). Stinnett then refers to multiple pieces of record evidence, arguing the "practical effects of these impairments were not fully addressed by limiting [him] to the performance of a full range of light work."[2] (Doc. 12, 15). Stinnett cites *Fraga v. Bowen* and *Newton* for the proposition that "when all … the practical effects of a claimant's limitations are not included in the RFC finding," any step 4 or 5 findings are unsupported by substantial evidence. *Id*, citing 810 F.2d 1296, 1304 (5th Cir. 1997); 209 F.3d at 458. If *Fraga* supports this argument, it does so only tangentially, as *Fraga* affirmed the ALJ's determination of non-disability when substantial evidence supported finding the claimant's

---

[2] Stinnett puts the phrase "practical effects" in quotation marks in his brief, but that phrase does not appear to be a quotation of or reference to the authority cited following the sentence, and so those quotation marks are omitted here.

"capacity for the full range of light work was not significantly compromised[.]" 810 F.2d at 1304. Likewise, Stinnett's citation to *Newton* is a requirement that if "the claimant suffers from ... a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert...." 209 F.3d at 458. The cited portions of *Fraga* and *Bowen* refer to the requirement that an ALJ consult a VE if direct application of the Medical-Vocational Guidelines is inappropriate. 810 F.2d at 1304; 209 F.3d at 458. Here, the ALJ did rely on the testimony of a VE in determining Stinnett was capable of performing light work. (Doc. 10-3, 19).

Stinnett argues the ALJ's assessed RFC does not sufficiently incorporate all of the impairments determined to be severe, but does not argue that a medical opinion was insufficiently considered, or detail why the various impairments are inconsistent with an RFC for light work. (Doc. 10-3, 12-15). Instead, he provides citations to and summaries of record evidence indicating that he was assessed with, at various points, pain and limited motion of the shoulder and difficulty breathing because of COPD. *Id.* Stinnett's burden here is not to show that there may be some evidence which could conceivably be read as contradictory to an RFC for light work, but rather to show there is no more than a "mere scintilla" of evidence supporting the ALJ's RFC finding. *Newton*, 209 F.3d at 452. Merely highlighting symptoms and conditions and pain he believes render him unable to perform the full range of light work is not sufficient to show the ALJ's decision is unsupported by substantial evidence.

### B. Non-severe impairments and the RFC

Stinnett also claims the ALJ committed reversible error by failing to assess limitations in the RFC which address mental impairments, even though the ALJ determined those mental impairments were not severe. (Doc. 12, 16). Specifically, Stinnett argues that as the ALJ determined his non-severe mental impairments caused mild restrictions in activities of daily living,

social function, and concentration, it is prejudicial error to fail to explicitly include those limitations in the RFC. (Doc. 12, 16). Stinnett clarifies in a responsive brief that he believes it is reversible error for the ALJ to fail to perform analysis under the Listing of Impairments at 12.00 in determining the RFC, even when all mental impairments are non-severe. (Doc. 14, 6). In support for this proposition, Stinnett quotes language that states the Agency "will consider the limiting effects of all … impairment(s), even those that are not severe, in determining … residual functional capacity." (Doc. 12, 15 quoting 20 C.F.R. § 404.1545(e)).

Stinnett appears to misread a paragraph of the ALJ's decision in arguing his mental impairments were not considered under 12.00 when crafting the RFC. The relevant paragraph states

> The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Doc. 10-3, 14). Stated differently, the ALJ analyzed Stinnett's depression and anxiety using the four broad functional areas of the paragraph B criteria to determine whether they should be categorized as severe impairments. *Id.* The ALJ determined they were not severe, meaning they were expected to have no impact on Stinnett's ability to work.[3] (Doc. 10-3, 13, quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) ("An impairment can be considered as not severe only if … it would not be expected to interfere with the individual's ability to work….").

---

[3] If those impairments had been rated severe, they would then receive the "more detailed assessment by itemizing various functions" in paragraph B and result in a mental component to the RFC.

As the nonsevere mental impairments would not impact Stinnett's ability to work in any significant way, the RFC set out by the ALJ reflects the 12.00 paragraph B mental function analysis in finding no mental limitations. Stinnett does not argue these nonsevere impairments are incompatible with the RFC for light work, only that they were not considered when crafting the RFC. (Doc. 14, 6). This is plainly in contrast to the text of the ALJ's decision, where he states the "residual functional capacity assessment reflects the degree of limitation the [ALJ] has found in the "paragraph B" mental function analysis." (Doc. 10-3, 14). Stinnett has failed to show the RFC is the result of legal error or unsupported by substantial evidence with regards to both severe and nonsevere impairments.

### C. Past relevant work

The ALJ, having determined Stinnett retained the RFC to perform light work, found that he was therefore capable of performing past relevant work as a warehouse supervisor. (Doc. 10-3, 19). The ALJ specifically stated that "because the claimant's past relevant work as a warehouse supervisor requires ... a light exertional level of work activity, ... the claimant is able to perform it as actually and generally performed." *Id.* Stinnett argues the ALJ erred in making this determination because he did not perform this job long enough for it to be considered as past relevant work and because the RFC as assessed would preclude him from returning to his specific past position as actually performed. (Doc. 12, 8-12).

The Social Security regulations provide that a claimant's ability to perform past work will be determined by considering the RFC, whether the work in question was substantial and gainful, and the duration and recency of that work. SSR 82-62, 1982 WL 31386 at *1-2. "The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the

economy) is generally a sufficient basis for a finding of 'not disabled'". *Id.* at *3. So, to carry his burden, Stinnett must show either that the classification of warehouse supervisor as past relevant work was erroneous or that he is incapable of performing that work as it is performed generally, not only that he could not perform at the specific position he occupied in the past.

Stinnett asserts that the position required working 50 hours every week, while a RFC is exclusively for a 40-hour work week unless the ALJ explicitly states differently. (Doc. 12, 9). However, as above, Stinnett's burden is to show he is incapable of working as a warehouse supervisor as that job is generally found in the national economy, not that the ALJ did not prove he could perform the same job at his specific previous place of employment. SSR 82-62, 1982 WL 31386 at *3; *Audler*, 501 F.3d at 448. Stinnett would need to show that the job as performed generally on a nationwide basis requires a workweek schedule in excess of 40 hours, not only at his specific previous employer. Stinnett similarly argues that his previous experience as a warehouse supervisor, as actually performed, is a composite job incompatible with comparison to the listing in the Dictionary of Occupational Titles as it required lifting a more significant amount of weight. (Doc. 12, 11). Yet again, merely showing that the RFC is incompatible with his specific previous employment as actually performed is not sufficient to carry his burden of proof.

Stinnett also argues his experience as a warehouse supervisor does not qualify as past relevant work because he performed that job for only three months, from December 2002 to February 2003. (Doc. 12, 8-9). He further points to authority that jobs with an SVP of 7 – such as the warehouse supervisor position – require two to four years to learn. (Doc. 12, 8 citing Dictionary of Occupational Titles, App. C § 2, 1991 WL 688702 (1991)). However, Stinnett also reported

working as a warehouse manager from January 2000 to March 2004 in a disability report. (Doc. 10-7, 6).[4] The text of the decision finding Stinnett could return to past relevant work reads

> At the hearing, the vocational expert testified that the claimant has past relevant work as a warehouse supervisor. This work was done for Bumpers Manufacturing from December 2002 until February 2003 and was done at substantial gainful activity levels.
>
> The vocational expert testified that this work is classified by the Dictionary of Occupational Titles as light and skilled with an SVP of 7. Because the claimant retains the capacity to perform light work, and because the claimant's past relevant work as a warehouse supervisor requires on a light exertional level of work activity, I find the claimant is able to perform it as actually and generally performed.

(Doc. 10-3, 19). Stinnett would have this read to indicate a binding factual finding that he performed as a warehouse supervisor for only those three months. (Doc. 14, 1).

However, this would require reading the ALJ's decision as internally inconsistent within the space of two sentences – a job with an SVP of 7 requires two to four years to learn, and the ALJ stated Stinnett worked in such a position for only three months. The Commissioner argues that Stinnett or his attorney did not challenge classification of warehouse supervisor as past relevant work by the VE at the hearing, but the VE was asked only to set out exertional demands and skill requirements, not to offer an opinion as to whether it may qualify as past relevant work. (Doc. 13, 9-10; Doc. 10-3, 44). Past relevant work is not mentioned until the ALJ's decision, where he first defines it then later asserts the VE characterized the warehouse supervisor position as past relevant work. (Doc. 10-3, 13; 19). Again, the VE was never asked about and never offered

---

[4] Stinnett and the Commissioner together cite to three pages of the record in highlighting inconsistent evidence regarding work history. On page 6 of Document 10-7, Stinnett says he performed as a Manager at a Warehouse from January 2000 to March 2004 for 72 hours and $1,000 weekly. On page 30 of Document 10-7 Stinnett provides the names of actual employers – in a space asking instead for the "job title" – saying he worked for Bumpers Manufacturing from January 2000 to October 2002 and December 2002 to February 2003 with "trucking" as the type of business. Stinnett also reports working for Design Transportation from October 2002 to December 2002 in "trucking" and RPM Riley from February 2003 to March 2005 with the type of business as "Equip. Opp.". Finally, page 35 of Document 10-7 says he performed as a Driver Manager/Warehouse Supervisor for 50 hours and $600 weekly, but doesn't indicate when he held that position or at which employer.

unprompted an opinion on whether any of Stinnett's previous experiences qualified as past relevant work.

So, the ALJ either set out the requirements for past relevant work on page three of his decision and forgot one of those main requirements six pages later, or failed to include the reasoning that led him to determine Stinnett either worked as a warehouse supervisor or manager for longer than the three months cited in the decision or that the three months were sufficient for Stinnett to learn to do the job such that it qualifies as past relevant work despite the SVP of 7. The record evidence is sufficiently unclear as to which positions Stinnett held at which employers for what length of time that merely asserting Stinnett's work as a warehouse supervisor qualifies as past relevant work without any explanation is deficient. Absent more direct factual findings that Stinnett performed in a warehouse supervisor position for a time longer than the three months cited in the ALJ's decision or that those three months were long enough to learn to do the job, there is insufficient evidence for any reasonable person to determine Stinnett's work as a warehouse supervisor or manager obviously qualifies as past relevant work. Although Stinnett bears the burden at step 4, and even considering that an ALJ is not required to explicitly detail what evidence is considered in reaching his findings, the ALJ's analysis in this case is insufficient to determine whether Stinnett carried that burden. *Audler*, 501 F.3d at 448; *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Because there is not substantial evidence supporting the ALJ's determination that Stinnett could return to past relevant work, the conclusion he is not disabled is likewise unsupported by substantial evidence and should be remanded to the Administration for more detailed factual analysis and further consideration.

## V. CONCLUSION

Stinnett has shown that the decision of the Commissioner is unsupported by substantial evidence. Considering the above, it is **RECOMMENDED** the decision of the Commissioner be **REVERSED** and Plaintiff's complaint be **REMANDED** to the Social Security Administration for further proceedings.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated March 31, 2017.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE